David Kusnetz, J.
The plaintiffs in two separate actions move for summary judgment for the relief prayed for in the complaint.
The plaintiff, Rutgers Chevrolet Company, is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey. The plaintiff, Louis B. Migliorini, is its *838 president. The defendant is a New York resident engaged in business in New York City as a retailer of phonograph records.
Plaintiff Butgers’ action is to recover the sum of $25,000 besides a protest fee alleged to be due on defendant’s check of $35,000 postdated August 20, 1956, which James Bizek, the payee thereof, indorsed and delivered to one Sam Landis, who in turn indorsed and delivered it to the plaintiff, which paid Sam Landis $35,000 by check dated August 20,1956.
The plaintiff, Migliorini’s action is to recover $11,000 besides protest fees alleged to be due on nine checks drawn by the defendant to said James Bizek postdated respectively October 24, 25, 27, 29, 30, November 3, 6, 7 and 8, 1956, indorsed and delivered by said payee to Sam Landis, who in turn indorsed and delivered them to the individual plaintiff. The latter indorsed and delivered the checks dated October 24, 25, 27, 29 and 30,1956, to George Chevrolet Co., which protested them and subsequent to such protest demanded payment from the plaintiff of the amount of each of such checks with protest fees; that upon the payment thereof by the plaintiff each of said checks was delivered to him. The checks dated November 3, 6, 7 and 8, 1956, were indorsed and delivered by the plaintiff to Circle Chevrolet Co., which protested them, and subsequent to such protest demanded payment from the plaintiff of the amount of each of such checks with protest fees; that upon the payment thereof by the plaintiff each of said checks was delivered to him.
The answer in each case denies the material allegations of the complaint and contains affirmative defenses to the effect that the plaintiffs are not holders in due course, since the checks had no valid inception as between maker and payee, were wrongfully negotiated by the latter, that the delivery of the checks was induced by fraud, and that the consideration therefor failed.
Our Court of Appeals recently had this to say concerning the drastic remedy of summary judgment (Sillman v. Twentieth Century-Fox, 3 N Y 2d 395, 404): “ To grant summary judgment it must clearly appear that no material and triable issue of fact is presented (Di Menna & Sons v. City of New York, 301 N. Y. 118). This drastic remedy should not be granted where there is any doubt as to the existence of such issues (Braun v. Carey, 280 App. Div. 1019), or where the issue is ‘ arguable ’ (Barrett v. Jacobs, 255 N. Y. 520, 522); ‘ issue-finding, rather than issue-determination, is the key to the procedure ’ (Esteve v. Abad, 271 App. Div. 725, 727). In Gravenhorst v. Zimmerman (236 N. Y. 22, 38-39) Chief Judge Hiscock, writing for this court, observed that one person may argue that as matter of law the assignor abandoned and lost the benefit of his rescission, *839 whereas another might think that was a question of fact, and concluded: ‘ It never could have been, or in justice ought to have been, the intention of those who framed our Practice Act and rules thereunder that the decision of such a serious question as this should be flung off on a motion for summary judgment. Whatever the final judgment may be the defendants were entitled to have the issue deliberately tried and their right to be heard in the usual manner of a trial protected.’ ”
According to the defendant these postdated checks were given to the payee as part of a business arrangement whereby the payee was to acquire phonograph records and resell them to the defendant with the understanding that these checks were deemed not to be delivered until the merchandise had been received by the defendant and that they were not to be used or transferred until the delivery of the merchandise. The defendant claims that he entered into this arrangement in reliance upon the representations by the payee that the checks would not be used until he had performed in accordance with the foregoing understanding. In Finkelstein v. Fine (182 App. Div. 521) the Appellate Division of this department held that the defense of a delivery of a promissory note upon condition that the payee deliver goods forming the consideration therefor, which condition was breached by the payee, is a defense available against the person claiming to be a holder in due course. In Walkof v. Strober (200 App. Div. 104, 105), the Appellate Division of the First Department said that the transfer of notes in violation of the agreement “ showed a defect in the instrument, which places the burden of proof upon the plaintiff to show that he was a holder in good faith.”
The plaintiff Migliorini, who acted for both plaintiffs, states that he did not know either Bizek, the payee, or the defendant, the maker, except that he had heard about “ Goody’s ” business ; that Landis, a Ford dealer, asked him (Migliorini) to cash a check for $35,000 and told him that on the preceding day he had cashed a similar check for $7,000. While Migliorini indicated doubt as to “ why a fellow like Goody * * * couldn’t * * * have got it cashed in New York ”, the court has not been informed how that doubt was dissipated. We do know, however, that the plaintiff never made any inquiry of the defendant concerning these large money transactions involving postdated checks made by a nonresident of the plaintiffs’ State, engaged in a business altogether different from that of the plaintiffs. All we are told is that Mr. Migliorini dismissed any doubts he may have had because he relied upon Sam Landis who told him there “ wasn’t time — we have to have the money.” *840 The day after the foregoing $35,000 transaction, Landis reappeared, this time to cash the nine checks totalling $11,000, which were postdated approximately three months. These checks, likewise, were cashed without any inquiry of the defendant, but solely on the indorsement of Landis. Migliorini, who paid $11,000 to Landis by his personal check dated August 21, 1956, was told that a Mr. Saltz acquired these checks from the payee and that he was not in a position to hold them. Saltz’ indorsement, however, was not required by the plaintiff Migliorini. After they were protested for nonpayment by the defendant’s closing out the account upon which they were drawn, this plaintiff paid back the money he had received for them from the two Chevrolet dealers to whom he had indorsed and delivered these checks before they were payable.
Inasmuch as the burden of proving that they were holders in good faith, rests upon the plaintiffs (Walkof v. Strober, supra), and the court finds that the opposing affidavit and the entire record of the transactions here involved establish a substantial issue of fact in which the veracity of the affiants is very much involved, a summary disposition of these two actions is not possible. The credibility of the affiants is for the trier of the facts. (Airflow Taxi Corp. v. C. I. T. Corp., 258 App. Div. 857; Bernstein v. Kritzer, 224 App. Div. 387.) While a presumption of the good faith of the transactions would flow from the plaintiffs’ taking the postdated checks before their due dates, absent any other facts (Canajoharie Nat. Bank v. Diefendorf, 123 N. Y. 191), Judge Ettgeb, who wrote for the court in that case, added (p. 202): “But where it further appears that such property has been fraudulently or illegally obtained from its owner or maker, and under such circumstances that the person putting it in circulation could not maintain an action thereon, it is incumbent upon the holder in order to succeed to go farther and show the circumstances under which it came into his possession, and that he has acted in good faith in the transaction. What constitutes good faith in such transactions has been the subject of frequent discussion in the books, and while differences of opinion may exist on some points, there is perfect uniformity * * * upon the point that a want of good faith in the transaction is fatal to the title of the holder, and that gross carelessness, although not of itself sufficient as a question of law to defeat title, constitutes evidence of bad faith. * # * It was held in Seybel v. N. C. Bank (54 N. Y. 288) that gross negligence, though not conclusive, was evidence of bad faith, and impliedly that a verdict of a jury based upon such evidence would be upheld.”
*841 The record herein discloses facts sufficient to entitle the defendant to have the issues “deliberately tried ” and his “ right to be heard in the usual manner of a trial protected.” (Gravenhorst v. Zimmerman, 236 N. Y. 22, 39.) He was not required to establish his “ defense to the motion by a preponderance of proof.” (First Trust & Deposit Co. v. Dent, 263 App. Div. 1058.) When the court “reaches the conclusion that a genuine and substantial issue of fact is presented, such determination requires the denial of the application for summary judgment.” (Esteve v. Abad, 271 App. Div. 725, 727.)
For all of the foregoing reasons, both motions are denied.
Submit orders.